IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASTRAILIA I. DUNFORD, individually and on behalf of all similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN DATABANK LLC,<br><br>Defendant. | No. C 13-03829 WHA<br><br><br><br><br>**REQUEST FOR SUPPLEMENTAL BRIEFING** |

The hearing on plaintiff's motion to certify two classes under FRCP 23(b)(3) is currently set for July 10. The undersigned judge would like to *sua sponte* provide both sides with an additional opportunity to brief the following issues. This is simply a request for more information and *is not a ruling*.

By **NOON ON JUNE 18**, each side shall please file a supplemental brief (**NOT TO EXCEED TWELVE PAGES**) addressing the following:

**PLAINTIFF'S SUPPLEMENTAL BRIEF.**

1.  After plaintiff filed a motion for class certification, defendant filed an opposition arguing, *inter alia*, that the sole named plaintiff's (Astrailia Dunford) entire case fails because there is no consumer report for "employment purposes." Defendant is essentially moving for summary judgment. In reply, plaintiff did not substantively respond, other than to argue that whether Ms. Dunford's background report was for "employment purposes" is a merits question to be addressed later.

It may be appropriate in some cases to rule on summary judgment before class certification. *See, e.g.*, *Wright v. Schock*, 742 F.2d 541, 544–46 (9th Cir. 1984); *Burden v. SelectQuote Insurances Services*, No. 3:10-cv-05966-LB, 2011 WL 2885016, at *1 (N.D. Cal. July 19, 2011) (Judge Saundra Brown Armstrong). Accordingly, plaintiff should put forth all of her best arguments and evidence in response to defendant's summary judgment motion. Please also address the following:

    a. Is there any sworn evidence or testimony that the report on Ms. Dunford was for "employment purposes" as defined by the FCRA? *See* 15 U.S.C. 1681a(h).

    b. If there are genuine issues of material fact regarding whether the report on Ms. Dunford was for "employment purposes," how could predominance be satisfied?

    c. Is *Hoke v. Retail Credit Corp.*, 521 F.2d 1079, 1084 (4th Cir. 1975), *cert. denied*, 423 U.S. 1087 (1976), which Magistrate Judge William Callahan, Jr. viewed as "no longer sound law" in *Lamson v. EMS Energy Mktg. Serv., Inc.*, 868 F. Supp. 2d 804, 817 (E.D. Wis. 2012), the only published decision extending the relevant sections of the FCRA to a non-employee or independent contractor? Are there any decisions extending Section 1681b(b) to someone applying for a nursing program involving an unpaid clinical rotation? Please candidly address all decisions on point.

    2. Is there a common method of proof for the proposed "Obscure Information" class? What is the common method of proof? How will plaintiff prove the third claim for relief under Section 1681c(a)(2) and Section 1681c(a)(5) on a classwide basis?

    3. How would damages be calculated for the proposed "Obscure Information" class? Plaintiff seeks statutory damages of $100 to $1,000 for willful violations. Does this mean that if there were 100 class members and 60 of them had reports which included obscure information in violation of the FCRA, the damages would be in the ballpark of $6,000 to $60,000?

    4. The parties have submitted a joint stipulation that numerosity is satisfied. Defendant estimates that the individuals comprising both classes independently number more than 100 people. Does this mean that 100 people have been identified as having obscure

information included in their reports? What is the total number of known "obscure information" errors?

Even though David Bradley from American DataBank testified that the report for Ms. Dunford included errors, is it possible that her errors were an anomaly? What evidence do we have that more errors exist?

5. Please submit a declaration setting forth chronologically Ms. Dunford's criminal history (appending relevant documents showing her criminal history that have been produced in discovery). Each of the criminal incidents disclosed in the American DataBank report on Ms. Dunford should be addressed in the chronological summary. The summary should also state:

   a. Whether each crime was a felony or misdemeanor (and whether it was reduced and when),

   b. The date of the charge,

   c. The date and method of disposition (*e.g.*, conviction, dismissal),

   d. If applicable, the date of expungement, and

   e. Whether each criminal disposition antedates the report by more than seven years under Section 1681c(a) and relevant authorities. *See, e.g., Moran v. Screening Pros, LLC*, No. 2:12-CV-05808-SVW, 2012 WL 10655745, at *4 (C.D. Cal. Nov. 20, 2012) (Judge Stephen Wilson).

6. Plaintiff appears to use "expungement" and "dismissal" interchangeably. What effect, if any, does the expungement have on plaintiff's third claim for relief under Section 1681c(a) of the FCRA?

7. The law firm of Caddell & Chapman, located in Houston, Texas, move to be appointed as class counsel. The Law Offices of Devin H. Fok (Alhambra, California) and A New Way of Life Reentry Project (Los Angeles, California) are also named in the pleadings.

FRCP 23(a)(4) and 23(g)(4) require that class counsel be able to fairly and adequately protect the interests of the class. On a motion to appoint class counsel, the court:

      (A) must consider:

         (i) the work counsel has done in identifying or investigating potential claims in the action;

         (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

         (iii) counsel's knowledge of the applicable law; and

         (iv) the resources that counsel will commit to representing the class;

      (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

      (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

      (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

      (E) may make further orders in connection with the appointment.

*See* FRCP 23(g)(1). Caddell & Chapman's motion fails to address many of these factors. For example, please address the work counsel have done in identifying or investigating potential claims and the resources that counsel will commit to representing the class. Please explain how Caddell & Chapman will ensure that the class is not saddled with excessive or needless attorney's fees, costs, and expenses. Counsel are located in Houston but Ms. Dunford and this action are located in California.

    Also, assuming *arguendo*, that willful noncompliance is found and attorney's fees are recoverable, how would fees be calculated? For example, what if damages or the settlement value were in the ballpark of $10,000?

    Please also candidly identify any other known FCRA actions against defendant pending in state or federal court (and who represents those plaintiffs).

**DEFENDANT'S SUPPLEMENTAL BRIEF.**

    1.    Is it true that defendant seeks dismissal of Ms. Dunford's claims on summary judgment? Does this mean that defendant is waiving the potential protections afforded by an early class certification ruling?

4

2. Section 1681b(b) includes the phrase "employment purposes," but Sections 1681c(a)(2) and (5) do not. Why isn't each violation of Section 1681c(a)(2) or Section 1681c(a)(5) a *per se* violation triggering liability that can be determined on a classwide basis? Why couldn't plaintiff hire an expert to review relevant consumer reports furnished by American DataBank to identify each *per se* willful violation for the proposed "Obscure Information" class? Has any federal court certified a class under Section 1681c(a) involving disclosure of obscure information more than seven years old?

3. In reply, plaintiff argues that extending the sections of the FCRA to Ms. Dunford is consistent with the broad remedial purpose of the FCRA. Please respond. Also, is there any authority applying or extending the sections of the FCRA pled in the complaint to non-employees or independent contractors? Please address *Hoke*.

4. The parties have submitted a joint stipulation that numerosity is satisfied. Defendant estimates that the individuals comprising both classes independently number more than 100 people. Does this mean that 100 people have been identified as having obscure information included in their reports? How did defendant come up with the "100" number? How many "obscure information" errors are known?

5. Ms. Dunford contends that there would be no state-by-state obsolescence issues because the class would be litigating *per se* willful FCRA violations. Please respond.

6. American DataBank opposes certifying the proposed "Obscure Information" class. Are there any discrete obscure information classes or subclasses certifiable under FRCP 23(b)(3)?

\*      \*      \*

Responses are due by **JUNE 18 AT NOON**. This is not a ruling.

Dated: June 4, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE